UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-CR-0325 (DWF/LIB) |
| v. | **REPORT & RECOMMENDATION** |
| EDWARD MCCABE ROBINSON, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the parties' Pretrial Motions. A Hearing was held on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Docket No. 22)[1] on November 16, 2011, at which time the Defendant appeared personally, and by his attorney, Caroline Durham, and the Government appeared by Deidre Y. Aanstad, Assistant United States Attorney.

**I.  BACKGROUND**

On August 28, 2011, officers with the Bemidji Police Department responded to a dispatch to an apartment complex in Bemidji. (Solheim Aff., Search Warrant, Ex. 1). Dispatch received information that the Defendant, who was the subject of an active arrest warrant, was staying at apartment #908 in the complex. Id. The caretaker of the apartment advised an officer of the Bemidji Police Department that he heard the Defendant was possibly in possession of a .357 magnum handgun. Id.

After arriving at the apartment complex, the Defendant and 4-5 other males were observed in the yard. Id. A police officer shouted at the group, "police, show me your hands."

---

[1] The Defendant withdrew his separate motion to suppress statements, admissions, and answers [Docket No. 23] at the hearing.

Id. The Defendant ran towards the patio door to apartment #908 and attempted to hide in the bathroom/laundry room of the apartment. Id. The Defendant was taken into custody and transported to the Beltrami County Jail. Id. A Ruger super Blackhawk .357 Magnum revolver was located in the bathroom/laundry room of apartment #908. Id.

Subsequently, law enforcement requested a warrant to obtain a DNA sample from the Defendant's saliva in order to compare any DNA found on the gun to the Defendant's DNA. Id. Beltrami County Judge Paul Benshoof granted a search warrant authorizing taking a saliva sample from the Defendant. Id. However, Judge Benshoof limited the search warrant with the following handwritten language, "The specimen sample shall be retained by the Bemidji Police Department in secure evidence storage and not transmitted to the BCA until further Order of this Court." Id. No additional order from Beltrami County Court has been submitted to the undersigned Court.

Presently before this Court is the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure. Specifically, the Defendant asks the Court to suppress the DNA sample and order the samples to be destroyed because the DNA sample was obtained unlawfully. The Court considers the motion below.

## II.     DISCUSSION

Compelling an accused to give a DNA sample is a search within the meaning of the Fourth Amendment. Padgett v. Donald, 401 F.3d 1273, 1277 (11th Cir. 2005) (swabbing inmates' cheeks for saliva to create a DNA database is a search within the meaning of the Fourth Amendment); Schlicher v. Peters, 103 F.3d 940, 942-43 (10th Cir. 1996) (taking a saliva sample for DNA information is a search within the meaning of the Fourth Amendment); see also United States v. Kraklio, 451 F.3d 922, 923 (8th Cir. 2006) (drawing blood for a DNA sample constitutes a search). Using a swab to extract DNA from a Defendant's cheek is invasive

2

because an individual's DNA reveals private medical information and the act of reaching into the subject's mouth to conduct the swab is an invasion into the body. United States v. Lassiter, 607 F.Supp.2d 162, 165 (D. D.C. 2009).

In this case, a warrant was issued from a Beltrami County Judge after a finding of probable cause allowing law enforcement to take a saliva sample from the Defendant to obtain a DNA sample. Probable cause exists when there is a fair probability that evidence of a crime will be found in particular place. United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003). Courts evaluate probable cause using a totality of the circumstances test. Id. "A district court's decision on probable cause is reviewed under a clearly erroneous standard and substantial deference is granted to the issuing judge." United States v. Gleich, 397 F.3d 608, 612 (8th Cir. 2005). "[T]he decision to issue the warrant is to be upheld if supported by substantial evidence in the record." United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). In other words, "so long as the [issuing judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Illinois v. Gates, 462 U.S. 213, 235 (1983).

Here, the Beltrami County district court judge concluded that probable cause existed and allowed a saliva sample to be taken from the Defendant. However, this Court concludes that the district court judge did not have a substantial basis for concluding that probable cause existed. In this case, the Beltrami County district court judge based his finding on an affidavit designed to provide evidence that the Defendant committed the crime at issue – namely illegally possessing a firearm. However, no showing was made by the Government at that time (nor now) as to whether DNA samples even exist on the firearm in question that can be used for comparison to the Defendant's DNA.

Although few courts have considered the issue of whether a warrant for a saliva sample requires proof that DNA evidence exists on the item seized, the Court finds guidance in United States v. Pakala, 329 F.Supp.2d 178 (D. Mass. 2004). In Pakala, the court granted the Government's motion to compel handprints, palm prints, fingerprints and DNA samples from the defendant. Pakala, 329 F.Supp 2d at 182. In making its decision, the Court observed that the Government had made the required showing of probable cause that the Defendant handled the weapon at issue. Id. at 179. However, the Court found that the DNA samples could not be compelled unless the Government first produced evidence demonstrating that the substance on the firearm produced a sufficient DNA sample. Id. at 181. Although the court granted the motion, Pakala remains relevant to this Court's analysis because it required a showing of probable cause before granting the motions. Id.

Likewise, in United States v. Roberts, Civ. No. 10-mj-458 (LIB), this Court refused to order a Defendant to submit to fingerprinting, palmprinting, and DNA sampling without a showing by the Government first of "some nexus between the bodily evidentiary items to be seized and the criminal activity." (Order [Docket No. 15], p. 7). The Court found it troubling that the Government had not "even tested the firearm at issue in this case to see whether there are any retrievable fingerprints or DNA testing evidence to which any comparison can be made." Id.

Probable cause requires a showing that is "particularized with respect to the person to be searched or seized." Maryland v. Pringle, 540 U.S. 366 (2003). Further, probable cause in this situation entails a demonstration of a "reasonable ground for relief" that the Defendant's DNA may match what is found on the firearm seized by the Government. Lassiter, 607 F.Supp. at 166 (stating that probable cause requires a showing that a reasonable ground for belief exists that the Defendant's DNA will match DNA located on the evidence before granting Government's

4

motion to compel Defendant to provide a DNA sample) (citing Pringle, 540 U.S. at 370-71). The officer's supporting affidavit must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being investigated. See Warden v. Hayden, 387 U.S. 294, 302 (1967).

Turning to the case at hand, the Government has not attempted to make any showing to support such a finding. The Government must demonstrate some nexus between the bodily evidentiary items to be seized and the criminal activity. Warden, 387 U.S. at 302. In Pakala, as part of its probable cause showing, the Government demonstrated that there were prints and possible DNA evidence on the weapon to which evidence seized from the Defendant could be compared. In contrast, here, the Government has provided no evidence that it has as yet even tested the firearm at issue in this case to see whether there is any retrievable DNA evidence to which any comparison of the DNA sample seized from Defendant can be made.

The Court is wary of allowing the Government to obtain the Defendant's DNA sample without any showing whatsoever that it will be useful to any ongoing investigation and that the intrusion into the Defendant's privacy is not fruitless. Schmerber v. California, 384 U.S. 757, 769-70 (1966) (finding that the Fourth Amendment forbids "intrusions on the mere chance that desired evidence might be obtained.")[2]

Thus, the Court concludes that probable cause did not exist for taking a DNA sample from the Defendant and that the warrant issued by the Beltrami County District Court Judge was issued in error.

---

[2] The Court notes that two recent decisions in the District of Minnesota upheld warrants compelling DNA samples even though there was no evidence that any DNA was actually found on seized firearms. See United States v. Hastings, 2011 WL 2412829 (D. Minn. May, 23, 2011); United States v. Willis, 2011 WL 1100127 (D. Minn. Mar. 24, 2011). However, the Court finds Pakala more instructive than Hastings and Willis. There is no suggestion in Willis or Hastings that the Defendant raised the same issue raised by the Defendant here challenging the validity of the warrant namely that there must be pre-requisite evidence that an actual DNA sample was found on the weapon.

However, this finding does not end the Court's analysis. While "evidence obtained as a result of a defective search warrant is generally inadmissible," United States v. Guzman, 507 F.3d 681, 685 (8th Cir. 2007), in United States v. Leon, the Supreme Court recognized a good faith exception to the Fourth Amendment exclusionary rule. 468 U.S. 897, 922 (1984). In Leon, the Court held that the Fourth Amendment does not require suppression of "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." Id. The rationale behind the rule is that "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." United States v. Puckett, 466 F.3d 626, 630 (8th Cir. 2006)(quotations omitted). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. (quotations omitted). The good faith exception to the exclusionary is broad. United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005).

However, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued" which justifies suppression. Leon, 468 U.S. at 922-23. The Court in Leon identified four specific circumstances in which the good faith exception does not apply:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

United States v. Perry, 531 F.3d 662, 665 (quoting United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007)).

Turning to the facts of this case, law enforcement relied in good faith upon the warrant issued by the Beltrami County District Court Judge. On the face of the state court warrant, it reasonably appeared that probable cause was found showing that the Defendant was in violation of gun laws based on an affidavit linking the Defendant to possession of the seized weapon. As noted above, law enforcement did not demonstrate, however, a link between the DNA sample requested and the weapon. Nonetheless, consistent with Leon, it was not unreasonable for law enforcement to be unaware of this required showing of probable cause prior to seizing the DNA sample from the Defendant. The law in this area is "not so clearly established that the officers could reasonably predict that the affidavit lacked sufficient indicia of probable cause." United States v. Ross, 487 F.3d 1120, 1123 (8th Cir. 2007).

Moreover, none of the exceptions to the good faith rule apply in this case. The Defendant has not presented any evidence that the affidavit used in support of the warrant was based on information the affiant knew was false or would have known was false. Nor is there any evidence that the Beltrami District Court Judge abandoned his judicial role. The state court warrant was not based on an affidavit clearly lacking probable cause such that law enforcement's reliance upon the warrant was unreasonable. Lastly, the warrant is not "so facially deficient in failing to particularize the place to be searched or the things to be seized so that no officer could reasonably rely upon it." See United States v. Hessman, 369 F.3d 1016, 1023 (8th Cir. 2004).

The Court concludes that the good faith exception applies and that law enforcement's reliance on the state court warrant was not unreasonable. Accordingly, this Court recommends that Defendant's DNA sample presently in custody of the Bemidji Police Department not be

destroyed as Defendant requests, but rather, that the DNA sample should continue to be maintained.

However, the state court warrant does not grant the Government authority to test the DNA sample. In fact, the warrant expressly states, "The specimen sample shall be retained by the Bemidji Police Department in secure evidence storage and not transmitted to the BCA until further Order of this Court." (Affidavit and Warrant, Ex. 1). Thus, the state court warrant does not grant the Government authority to test the DNA sample without an additional court order. Based on the record now before the Court, no additional order was granted by a Beltrami County Court judge allowing the sample to leave the custody of the Bemidji Police Department. Further, for the reasons discussed above, this Court recommends against ordering the release of the Defendant's DNA sample for testing pursuant to the state court warrant because the Government has not yet demonstrated probable cause since it has not shown that any DNA in fact exists on the seized firearm for a comparison to be made to Defendant's DNA. However, if the Government later obtains a DNA sample from the weapon, to which a comparison can be made, then it may ask the Court for an order releasing the DNA sample for testing at that time.

## V.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**

1. That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search & Seizure [Docket No. 22] be **DENIED.**


Dated: December 2, 2011					s/Leo I. Brisbois
								LEO I. BRISBOIS
								United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 16, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.